*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0206P (6th Cir.)
File Name: 04a0206p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

MULTIMEDIA 2000, INC.,
*Plaintiff,*

FINOVA MEZZANINE CAPITAL, INC.,
*Plaintiff-Appellant,*

v.

TAMARA L. ATTARD, PAUL G. ATTARD, and MULTICOM PUBLISHING, INC.,
*Defendants-Appellees.*

No. 03-5033

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-01182—Aleta A. Trauger, District Judge.

Argued: April 29, 2004

Decided and Filed: July 1, 2004

Before: GUY, GILMAN, and COOK, Circuit Judges.

---

### COUNSEL

**ARGUED:** Christopher E. Thorsen, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellant. Robert L. Sullivan, LOEB & LOEB, Nashville, Tennessee, for Appellee. **ON BRIEF:** Christopher E. Thorsen, Thor Y. Urness, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellant. Robert L. Sullivan, LOEB & LOEB, Nashville, Tennessee, for Appellee.

GILMAN, J., delivered the opinion of the court in which GUY, J. (p. 11), concurred in the decision to reverse the grant of summary judgment to the defendants, but for the reasons set forth in his separate concurrence/dissent. COOK, J. (p. 12), filed a separate dissenting opinion.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. To secure a loan to their company—Multicom Publishing, Inc.—Tamara and Paul Attard granted a security interest in all of their Multicom stock to the lender, Finova Mezzanine Capital, Inc. (FMC). The Attards also executed a guaranty agreement promising to absolutely assign their stock to FMC free of all claims in the event of Multicom's default, failing which they agreed to be personally liable for the debt. When FMC subsequently notified the Attards that Multicom was in default and demanded the assignment of their stock, the Attards signed the appropriate assignment form, but included a letter stating that the assignment was executed under duress.

FMC filed suit, claiming that, by virtue of the duress letter, the Attards had not unconditionally assigned their stock and were therefore personally liable for the balance of the

Multicom debt pursuant to the guaranty agreement. The district court granted summary judgment in favor of the Attards. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual background

The Attards founded Multicom, a multimedia publishing company, in 1994. Multicom entered into a $3 million loan agreement with a predecessor of FMC in 1996. As part of the loan transaction, Multicom granted FMC a security interest in substantially all of Mutlicom's assets.

As further security for the loan, the Attards signed a Stock Pledge Agreement (Pledge Agreement) on October 3, 1997 that granted FMC a security interest in their Multicom stock, which was perfected by FMC's possession of the stock certificates. The Attards also executed a Conditional Continuing Guaranty and Assurance (Guaranty), wherein they agreed that if Multicom defaulted on its obligations to FMC, the Attards would "absolutely assign" all of their Multicom stock to FMC within two days following a written demand by FMC. Section Five of the Guaranty provided that the Attards

agree that if a Designated Default occurs, then, within two (2) calendar days following the written demand of Lender, the Attards shall absolutely assign to Lender or its designee, pursuant to ordinary instruments of assignment to be prepared by Lender, all of the stock of Borrower [Multicom] that is then [] pledged to Lender to secure the Obligations. This conveyance will vest title in the transferee free of any claim of the Attards and free of any other encumbrance, and without reduction in the Obligations that Borrower then owes to Lender.

In the event that the Attards failed to comply with Section Five's absolute assignment of Multicom stock, the Guaranty provided that they would become personally obligated, both jointly and severally, for Muticom's debt to FMC. Section Six of the Guaranty specifically stated that "[s]hould either of the Attards fail to comply fully with their obligations in . . . Section 5 above, . . . the Attards hereby jointly and severally guarantee to lender the timely payment and performance of all of the obligations."

FMC sent a letter to the Attards on November 11, 1997, advising them that Multicom had defaulted on its obligations to FMC and demanding "the immediate, absolute conveyance of the Pledged Stock to [FMC]." The letter also stated that if the Attards failed to convey the pledged stock by November 18, then they would become personally liable for Multicom's obligations. FMC followed up on November 12 with a form titled "Absolute Assignment of Stock." On November 17, the Attards tendered to FMC the completed Absolute Assignment of Stock form, but accompanied the signed form with a letter from their counsel expressly reserving certain of the Attards' rights against FMC. The letter stated, in pertinent part:

Please be advised that my clients forward this document under duress, in order to mitigate their damages, and with full and absolute reservation of all of their rights at law and in equity. These rights include, without any limitation whatsoever, the right to challenge as null and void the underlying documents pursuant to which [FMC] purports to proceed; the right to challenge the alleged default asserted by [FMC]; and the right to challenge the activities of [FMC] and Multicom in pursuing foreclosure of the subject shares of stock . . . .

FMC initially responded with a letter dated November 18, 1997, informing the Attards that FMC was also reserving all of its rights against them. The next significant event was on February 2, 1998, when FMC sold all of the assets of Multicom to Multimedia 2000, Inc. for $2 million. Eight

days later, on February 10, 1998, FMC wrote the Attards to inform them that the duress letter caused their assignment of Multicom's stock to not be free of all claims, thus subjecting them to personal liability under the Guaranty.

## B.  Procedural background

In April of 2001, FMC sued the Attards for breach of contract based upon the Attards' refusal to pay FMC the balance of Multicom's loan obligations according to the terms of the Guaranty. FMC moved for summary judgment on its breach-of-contract claim in February of 2002. The district court denied FMC's motion and *sua sponte* granted summary judgment to the Attards. After the district court denied FMC's motion for reconsideration or, in the alternative, to alter or amend the judgment, FMC appealed.

## II.  ANALYSIS

### A.  Summary judgment standard

We review a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.* 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.  The effect of the duress letter on the assignment of the Attards' stock to FMC

On appeal, the key issue is whether the Attards fully complied with their obligations under the Guaranty to "absolutely assign" all of the stock that they had pledged to FMC under the Pledge Agreement. The Guaranty explicitly states that "[t]his conveyance will vest title in the transferee *free of any claim of the Attards and free of any other encumbrance . . . .*" (Emphasis added.) FMC argues that the Attards' claim of duress in their November 17, 1997 letter, in addition to their "full and absolute reservation of all their rights at law and equity," does not represent an assignment "free of any claim of the Attards." The Attards respond that the Guaranty did not include or require any disclaimer of duress or other legal or equitable rights. They also contend that the November 17 letter did not create an "adverse claim" rendering the assignment ineffective.

The Guaranty states, and the parties do not contest, that it shall be interpreted in accordance with Tennessee law. Under Tennessee law, "[a] contract signed under economic duress is voidable by the victim, not void." *Cumberland & Ohio Co. of Texas v. First Am. Nat'l Bank*, 936 F.2d 846, 850 (6th Cir. 1991); *United States Fidelity & Guar. Co. v. Cassel Bros., Inc.* (*In re McNeil*), 22 B.R. 408, 414 (Bankr. E.D. Tenn. 1982) ("A contract or other instrument is voidable under Tennessee law on the basis of duress . . . .") "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement (Second) of Contracts § 7 (1981).

The district court recognized that by claiming duress, the Attards had informed FMC that the Assignment was voidable under Tennessee law. According to the district court, however, merely asserting duress, as opposed to actually rescinding the Assignment, did not constitute a claim on the

stock that made the Assignment invalid. We respectfully disagree. By claiming that they executed the Assignment under duress, the Attards put FMC on notice that they were retaining the right to rescind the assignment of their stock. Their letter in effect materially modified the terms of the Assignment. *See* Restatement (Second) of Contracts, § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.").

FMC supports its argument that the Attards' letter constituted a claim in violation of the Guaranty by relying upon the definition of an "adverse claim" in Tenn. Code Ann. § 47-8-102(a)(1) (hereinafter referred to as UCC § 8-102(a)(1)). Section 8-102(a)(1) defines an adverse claim as "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." The Official Comment to this section explains that the definition of an adverse claim is comprised of two parts:

First, the term refers only to property interests. Second, the term means not merely that a person has a property interest in a financial asset but that it is a violation of the claimant's property interest for the other person to hold or transfer the security or other financial asset. . . . The term adverse claim is not, of course, limited to ownership rights, but extends to other property interests established by other law. . . . *An adverse claim might . . . be based upon principles of equitable remedies that give rise to property claims. It would, for example, cover a right established by other law to rescind a transaction in which securities were transferred.*

(Emphasis added.)

Although FMC has not cited any cases—and we have found none—that apply § 8-102(a)(1) to a factual situation analogous to the present case, the very definition of an

adverse claim appears to describe the instant situation. The Official Comment plainly states that an adverse claim may be based upon the right "to rescind a transaction in which securities were transferred." This is precisely what happened in the present case. By claiming that they completed the Absolute Assignment of Stock under duress, the Attards have reserved their right to rescind the transaction. Accordingly, under UCC § 8-102(a)(1), their claim of duress impinged upon FMC's freedom to alienate the stock, because the existence of an adverse claim means "that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." UCC § 8-102(a)(1).

The Attards' duress letter thus clouded title to the stock that they purported to transfer absolutely to FMC, contrary to the Guaranty's requirement that the stock be assigned "free of any claim of the Attards and free of any other encumbrance . . . ." Even though FMC could have theoretically given good title to a "protected purchaser" of the Attards' stock by not disclosing their claim of duress, *see* UCC § 8-303 (defining the term "protected purchaser"), FMC would have been unable to warrant that the stock was being conveyed free of all claims. And a truthful disclosure of the Attards' claim would of course have prevented any buyer from having protected-purchaser status. FMC's contractual right to the stock free and unencumbered was therefore thwarted by the Attards' duress letter.

### C.  The Attards' personal liability

As previously set forth, Section Six of the Guaranty provided that the Attards' failure to assign their Multicom stock free and clear of all claims would result in the Attards becoming personally liable for the Multicom debt. Their action in clouding title may well have been an unwise decision on their part, because FMC had the right to sell all of Multicom's assets under a separate security agreement that was not dependent upon the Attards' personal guaranty. This in fact was precisely what FMC did on February 2, 1998.

Perhaps an earlier sale of Multicom's stock would have yielded no more than the $2 million that FMC eventually received from the sale of Multicom's assets in February of 1998. But the Attards knew that they had a choice under the Guaranty to either assign their stock free of all claims or, by not doing so, become personally liable for the balance due FMC. The fact that they may have made a poor choice is not a basis to disregard the contractual consequences of their action. Courts are not permitted to rewrite contracts, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir. 1998), and each party must be given the benefit of his bargain. *Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413, 421 (6th Cir. 1981).

In sum, I believe that the Attards are bound by the bargain they made and the actions they took. Thus, in my opinion, they are personally liable to FMC for the balance of the Multicom debt, subject to any affirmative defenses available to them. This conclusion, however, is not shared by either of my judicial colleagues, and therefore is not the holding of this court.

## D.  Potential affirmative defenses

My conclusion that the Attards have exposed themselves to personal liability for Multicom's debt does not preclude their right on remand to present any affirmative defenses that may be available to them. FMC, for example, had a duty to mitigate its damages. The record evidence shows that the Attards sent the Absolute Assignment of Stock form, accompanied by the duress letter, in November of 1997. FMC waited until February of 1998, however, to advise the Attards that their assignment of the Multicom stock was not "sufficient performance" and that FMC was exercising "its right to declare the Attards to be personally jointly and severally liable for all obligations of Multicom." Whether this delay constituted a failure on the part of FMC to mitigate its damages is an open question that has yet to be developed.

"It is a well established rule in Tennessee that the party injured by the wrongful act of another has a legal duty to exercise reasonable and ordinary care under these circumstances to prevent and diminish the damages. One is not required, however, to make extraordinary efforts. The burden of showing that losses could have been avoided by the plaintiff by a reasonable effort to mitigate damages after defendant's breach of contract is on the defendant who breached the contract." *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 169 (Tenn.App. 1995); *see also* 24 Samuel Williston and Richard A. Lord, *Williston on Contracts* § 64:27 (4th ed. 2002) ("[T]he principle of mitigation of damages . . . frequently involves a determination as to whether the [injured party] acted reasonably under the circumstances. . . . What is a reasonable effort to avoid the injurious consequences of a breach is a question of fact."). The application of these principles and of any other defenses that the Attards might have to their personal liability, including waiver and estoppel, is left for development in the district court upon remand.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## CONCURRING IN PART, DISSENTING IN PART

GUY, Circuit Judge, concurring in part and dissenting in part. I concur in the decision to reverse the summary judgment that was entered in favor of the defendants. I do not believe on the record that was before the district judge that it was appropriate to rule, as a matter of law, that the Attards did not breach the guaranty agreement. I also believe, however, for the same reason, that it is inappropriate for this court to decide the breach issue in favor of the plaintiffs at this juncture. Once that decision is made the Attards are limited to affirmative defenses that would impact only the amount of the judgment plaintiffs might obtain.[1]

By holding that the letter accompanying the assignment did not constitute a breach of the duty to make the assignment free of all claims, the district court apparently felt no need to consider other defenses the Attards may have that would impact upon their liability including waiver by the plaintiffs to proceed under the assignment. As the record now stands before this court, it appears the plaintiffs proceeded to realize all of the monetary value possible from the failed company by the sale of its assets and now seeks what amounts to a deficiency judgment for the balance of the debt. By relying on the claim that the Attards breached the assignment agreement, the plaintiffs arguably put themselves in a better position than they would have been had there been an unqualified assignment. This seems to me to be anomalous, and I would remand for further development of the record and trial if necessary.

---

[1]I agree with Judge Gilman's conclusion that the Attards may assert affirmative defenses on remand. I do not agree, however, that they are limited to defenses only as to damages.

## DISSENT

COOK, Circuit Judge, dissenting. Because I disagree with the conclusion that the Attards failed to assign their stock"free of all claims," I respectfully dissent. The Attards signed the stock assignment exactly as Multimedia drafted. The letter the Attards sent with the assignment, complaining that they were executing the assignment under conditions of economic duress, does not meet any legal definition of a "claim" against the stock. Thus, the district court correctly concluded that the Attards fulfilled their contractual obligations to Multimedia.

I would therefore affirm the district court's judgment, for the reasons stated in that court's memoranda of April 26, 2002 and May 23, 2002.