**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0284n.06

No. 09-2411

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 03, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ROBERT LEE BAILEY, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| CHRISTOPHER GOLLADAY, et al., | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

**Before: SUTTON and KETHLEDGE, Circuit Judges; and HOOD, Senior District Judge.**[*]

PER CURIAM.  Robert Lee Bailey appeals from the district court's order accepting the magistrate judge's report and recommendation and granting summary judgment for the defendants on qualified immunity grounds.  The district court found that Bailey's Eighth Amendment rights were not violated and that the defendants were entitled to qualified immunity.

For the reasons that follow, the district court's order of judgment is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.

**I.  Factual and Procedural Background**

At all relevant times, Bailey was incarcerated at the Alger Maximum Correctional Facility in Munising, Michigan.  In his pro se complaint brought pursuant to 42 U.S.C. § 1983, he avers that the

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

defendants, Corrections Officers Christopher Golladay, John Duvall, Kirt Mahar, Matthew Storey, and John Forrest, violated his right to be free of cruel and unusual punishment because they subjected him to excessive force in an incident initially between him and Golladay on January 14, 2006, arising out of Bailey's possession of a betting slip, an item of contraband.

Golladay ordered Bailey to hand over the betting slip. Bailey refused to comply with the order, instead tearing up the betting slip and flushing the pieces down the toilet. Golladay ordered Bailey and his cell mate out of their cell so that he could search the cell and pat them down. Bailey was escorted to the television room, and Golladay returned to search for contraband with Correction Officer Roy Headley. Approximately 20 minutes later, Headley ordered Bailey and his cell mate to return to their cell. Bailey returned to his cell to discover a number of his personal items had been damaged or destroyed. Upset, Bailey reported Golladay's behavior to Golladay's supervisor, identified only as Sergeant Burk. At some point, Bailey exited his cell, whereupon Sergeant Burk ordered Bailey to return to his cell and stated that he, Burk, would be there shortly to resolve the complaint. Upon arriving in the hallway outside his cell, Bailey realized that Golladay had entered his cell again.

The parties dispute whether Bailey or Golladay initiated physical contact after Bailey entered his cell. It is undisputed, however, that Bailey ran toward his cell. Video footage of the incident then shows Golladay forcing Bailey to the floor of the hallway outside of the cell. Bailey alleges that Golladay struck him with a closed fist to the jaw then grabbed Bailey's wrist and propelled him out of the cell, slamming him into a concrete wall, and knocking the wind out of him.

In the hallway, Golladay put Bailey up against the wall, began punching his ribs, and then rammed his head into Bailey's abdomen and chest. Bailey admits that he continued to resist

2

Golladay's efforts to subdue him until other officers arrived. Bailey only stopped fighting after several officers restrained him. Bailey, however, alleges that when Storey arrived, he grabbed Bailey's arms and held them securely while Duvall began to punch Bailey in the upper torso. Storey then placed Bailey in handcuffs. While Bailey was immobilized on his stomach, Golladay told Bailey that he was going to kill him. Subsequently, Bailey alleges Golladay, Forrest, Mahar, Storey and Duvall struck Bailey in the face and head numerous times with their feet and their fists. Bailey claims that Mahar punched and kneed him in the back.

Subdued, Bailey was escorted to the segregation unit by defendants Duvall, Storey, Forrest, and an unnamed officer, all of whom allegedly physically threatened Bailey and used excessive force while transporting him to segregation. Bailey's brief describes the scene as follows:

> Racial slurs were being shouted at [Bailey] throughout this whole transfer. [Bailey's] head was being held down forcibly to the point of actual choking by Defendants Story and Forrest, and as the Segregation unit doorway was approached, these Defendants intentionally slammed [Bailey's] head into the dividing structure causing [Bailey] dizziness, faintness, and the inability to maintain normal balance. [Bailey] was carried into the Segregation unit where he was thrown into a caged shower on C-wing where he laid semi-conscious, battered and abused, on the filthy shower stall floor and allowed to suffer unnecessarily from the extreme pain of the beating. [Bailey] continually asked for medical treatment, even as the excruciating pain from the beating and from the slamming into the door left him in and out of consciousness. [Bailey] was left on the filthy concrete shower floor for approximately one hour until he was rousted [sic] conscious by officers and a nurse.

Bailey was treated in the emergency room and diagnosed with two black eyes, nerve damage to his left eye, multiple contusions to his head and body, a possible fracture to his left wrist, nerve damage to his left wrist, and permanent scars.

## II. Standard of Review

3

We review de novo a district court's grant of summary judgment. *Lockett v. Suardini,* 526 F.3d 866, 872 (6th Cir. 2008) (citing *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006)). Thus, a grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The court's function is not to weigh the evidence but to decide whether there are genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). In determining whether there are genuine issues of material fact, the evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

## III. Discussion

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). "Whether a defendant is entitled to qualified immunity depends on whether the plaintiff's constitutional rights were violated and whether those rights were

4

clearly established." *Mingus v. Butler,* 591 F.3d 474, 479 (6th Cir. 2010) (citing *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008); *see Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court may exercise its discretion when determining which prong to address first in light of the circumstances. *Pearson,* 129 S. Ct. at 818. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. "Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (citing *Buckner v. Kilgore*, 36 F.3d 536, 540 (6th Cir. 1994)).

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Id.* at 383 (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).

The prisoner must satisfy both an objective and a subjective component with respect to this inquiry. *Id.* at 383. In the context of a prison disturbance, the analysis "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley,* 475 U.S. at 320-21). This showing will satisfy the subjective component required for a claim under the Eighth Amendment. *Williams,* 631 F.3d at 383. To make this determination, the court may "evaluate the need for application of force, the relationship between that need and the

5

amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). The objective component requires "the pain inflicted to be sufficiently serious." Williams, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). However, the seriousness of the injuries is not dispositive. *Id*. This is a "contextual" inquiry that is "responsive to contemporary standards of decency." *Id.* (quoting *Hudson*, 503 U.S. at 8-9).

The district court, after reviewing several videos of the alleged incident, determined that Bailey initiated the incident by barging into the cell and that the force used by the defendants to restrain Bailey and to control the situation that Bailey had created was necessary and reasonable under the circumstances. The district court noted that Bailey had to be restrained by several officers and only stopped his aggressive behavior when he was completely restrained. The district court determined that the defendants had not violated the Eighth Amendment and, accordingly, that they were entitled to qualified immunity.

To the extent that the defendants Golladay, Forrest, Mahar, Storey and Duvall were acting to bring Bailey under control, this Court completely agrees with the district court. Bailey instigated the disturbance in the cell block area, which involved several other inmates and resulted in injuries to four corrections officers. The disturbance could have easily escalated, but the corrections officers were able to quash the violence quickly and effectively. To the extent that the corrections officers used force to subdue and restrain Golladay, that use of force was made by the corrections officers in a good faith effort to maintain discipline. It is clear that the corrections officers only used as much

force as necessary and reasonably calculated to respond to the reasonable threat perceived by the corrections officers. We affirm the district court's opinion in this regard.

However, the district court did not address Bailey's allegations that his Eighth Amendment right to be free of cruel and unusual punishment was violated by the conduct of defendants Duvall, Storey, Forrest, and the unnamed officer after he was restrained and as he was being transported to the shower in the segregation unit. Bailey alleges that, as the defendants were transporting him to the segregation unit, they were using racial slurs and making physical threats while causing him to choke. Additionally, he alleges that they intentionally and repeatedly banged his head into the steel entrance to the unit. Interpreting the facts in a light most favorable to Bailey, as this Court must, these alleged actions are sufficient to demonstrate unnecessary and wanton infliction of pain unrelated to any legitimate penological purpose upon a prisoner once he is restrained and compliant. *Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004) ("An unprovoked application of force to a handcuffed and shackled prisoner would violate clearly established law under the Eighth Amendment."); *see Pelfrey*, 43 F.3d at 1037.

As there is a factual dispute as to whether such force was used against Bailey after he was restrained and had become cooperative, the district court erred in determining that Defendants Duvall, Story, Forrest and the unnamed officer were due qualified immunity for the actions taken while transporting Bailey to the segregation unit.

## VI. Conclusion

For the foregoing reasons, the district court's grant of summary judgment is **AFFIRMED** in part and **REVERSED** in part. The matter is **REMANDED** to the district court for further proceedings consistent with this opinion.