NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0247n.06
Filed: April 1, 2005

No. 04-1347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CLIFTON WALKER,                          )
                                         )          ON  APPEAL  FROM  THE
        *Plaintiff-Appellant,*           )          UNITED STATES DISTRICT
                                         )          COURT FOR THE WESTERN
v.                                       )          DISTRICT OF MICHIGAN
                                         )
MICHIGAN  DEPARTMENT  OF                 )                    O P I N I O N
CORRECTIONS, et al.,                     )
                                         )
        *Defendants-Appellees.*          )
                                         )
                                         )

BEFORE:    COLE and GIBBONS, Circuit Judges; SCHWARZER, Senior District Judge[*]

PER CURIAM. Plaintiff Clifton Walker, a Michigan prison inmate proceeding pro se,

appeals the district court's dismissal of his 42 U.S.C. § 1983 claims against prison officials.

Because we find that the district court did not err in determining that none of Walker's claims could

result in relief under § 1983, we AFFIRM the dismissal of Walker's complaint.

I. BACKGROUND

As of January 8, 2003, Walker had filed numerous frivolous grievances via the prison

grievance process at the Bellamy Creek Correctional Facility, where he was incarcerated. As a

result, Walker was placed on "modified access status," meaning that he could only file a grievance

by first contacting the "First Step Grievance Coordinator" for the proper grievance form. If the

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern
District of California, sitting by designation.

coordinator determined that Walker had a viable claim, Walker would be given a form, and the grievance would proceed in conformity with the normal grievance process. If the coordinator did not agree that Walker had a viable claim, or if Walker filed a grievance without first applying to the coordinator, his claim would not be heard, and his modified access status would be extended. Walker does not dispute that his original placement on modified access status was proper.

According to Walker, his most recent modified access status was to expire as of June 9, 2003. On June 10, 2003, he filed 59 grievances with Bellamy's grievance coordinator, a Mr. Novak. Walker claims that, the next day, Novak "secretly tried to push all of the grievances under [Walker's] cell door. [Walker] caught him and called him, but he ran from [Walker's] cell down the hall. At the bottom of each grievance was stamped: 'This grievance is being returned to you unprocessed for violation of modified access status. A request for a 30 day extension of your status has been submitted for this violation.'" On June 12th, Walker received a letter from the prison's warden, Ken McKee, stating: "You had submitted 59 grievances to the Grievance Coordinator within a three-day period. You are currently on modified access until 7/7/03. Because of this, I am placing you on extended modified access for a period of one year until 7/7/04." At this point, Walker began requesting copies of the records regarding his modified access status, since he had believed his modified access status had expired as of June 9th. He made these requests to Novak, Warden McKee, and Bill Martin, Director of the Michigan Department of Corrections ("MDOC"). Walker was repeatedly told that he was originally placed on modified access while incarcerated at another facility, and that Bellamy did not have copies of the relevant records. However, Walker

claims that he had never been provided with any document stating that his modified access status would continue after June 9, 2003, until he received Warden McKee's notice.

Walker thereupon filed suit in district court, alleging that his continued modified access status after June 9, 2003 was both arbitrary and based on the submission by prison authorities of fraudulent documents. Further, Walker alleged that he was placed on modified access status in retaliation for filing non-frivolous grievances, and that his placement on modified access deprived him of access to the court system, since he would thus be unable to exhaust administrative remedies before filing a lawsuit. All these facts, Walker claims, violated his rights under the First and Fourteenth Amendments, and entitled him to monetary damages under 42 U.S.C. § 1983.

The district court dismissed Walker's claims pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), codified at various sections of 28 and 42 U.S.C., which requires a district court to dismiss a prisoner's § 1983 claim prior to service on the defendants in the event that the prisoner has failed to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c). The district court held first that the MDOC was not a proper defendant because state agencies may not be sued under the Eleventh Amendment without their consent. In addition, the district court held that there was no right of access to a prison grievance procedure, and thus that Walker could not obtain relief on any due process-related Fourteenth Amendment claims. Further, insofar as Walker claimed First Amendment retaliation violations, the district court held that Walker's placement on modified access did not constitute an "adverse action", since such placement would in no way deter the filing of legitimate, non-frivolous grievances. Finally, the district court concluded that Walker had not been deprived of access to the

courts, since, on any suit regarding a grievance dismissed as frivolous by the grievance coordinator, a district court would be required to find that Walker had exhausted all available administrative remedies. As a result of these findings, the district court dismissed Walker's claims.

Walker timely appealed.

## II.  ANALYSIS

### A. Standard of Review

We review the dismissal of a complaint for failure to state a claim upon which relief can be granted *de novo. See, e.g.*, *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).  In reviewing such a dismissal, we are required to construe the complaint in the light most favorable to the plaintiff, accepting all factual allegations as true. *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).  Further, we construe *pro se* complaints liberally, and will affirm a dismissal of such a complaint only if it is "beyond doubt" that the plaintiff can prove no set of facts which would support a grant of relief. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Although the claims in his complaint and arguments on appeal are at times difficult to discern, Walker essentially claims that the district court wrongly dismissed his complaint because his modified access status was "implimented [sic] through the manufacturing of fraudulent documentation, arbitrarily imposed as punishment and retaliation for using this abstract grievance process."

### B. Eleventh Amendment

The district court first dismissed MDOC as a defendant, on Eleventh Amendment grounds, since Walker's suit is solely for monetary damages and not for any equitable relief.  We have previously noted that state agencies, including corrections departments and defendants in their

official capacities, cannot be sued for monetary damages without the state's consent, pursuant to the Eleventh Amendment. *Turker*, 157 F.3d at 456-57; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984). The district court was thus correct in dismissing MDOC as a defendant.

## C. Arbitrary Conduct

The district court next found that, whether or not defendants' conduct in limiting Walker's access to the grievance procedure was arbitrary or based on fraudulent documents, there was no constitutionally protected due process interest in unfettered access to a prison grievance procedure. All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures. *See, e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Young v. Gundy*, 30 Fed. Appx. 568, 569-70 (6th Cir. 2002). Accordingly, since a violation of a constitutional right is required in order to obtain relief under §1983, *see, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988), the lack of a constitutional right to unfettered access to a grievance procedure means that Walker is not entitled to relief on his claim that the modified access procedure arbitrarily denied him access to the prison's grievance procedures. *See Antonelli*, 81 F.3d at 1430.

## D. Retaliation

Walker's next--and perhaps most significant-- claim is that Novak, the grievance coordinator, with the cooperation of Warden McKee and other MDOC officials, retaliated against him by manufacturing documents that fraudulently claimed he was on modified access, placing him on

modified access, and not properly considering grievances Walker had filed, because Walker had previously filed grievances. In order to demonstrate retaliation for protected conduct, a plaintiff must allege (1) that he engaged in protected conduct, (2) that an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct," and (3) that the adverse action was motivated by the protected conduct. *See, e.g.*, *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Prisoners have a First Amendment right to file institutional grievances without being subject to retaliation, *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000); however, this right only extends to the filing of non-frivolous grievances. *See Lewis v. Casey*, 518 U.S. 343, 352-53 & n.3-4 (1996); *see also Herron*, 203 F.3d at 415. The content of the grievances for which Walker claims the officials retaliated against him is not entirely clear, but because other grounds for dismissal exist, we may assume for the purposes of this appeal that the grievances at issue were non-frivolous, and thus that Walker has met the first prong of the *Thaddeus-X* test.

Assuming this, Walker must next show that there was adverse action taken against him. In order to constitute an adverse action, the prison officials' actions must have deterred a person of ordinary firmness from engaging in the filing of non-frivolous grievances. *Thaddeus-X*, 175 F.3d at 394. Here, an ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances. Since the only penalty for filing a grievance found to be frivolous is extension of modified status, there should be no chilling effect on the filing of non-frivolous grievances. Finally,

and most importantly, Walker admits in his complaint that he did attempt to file many grievances during the time when he was on modified access status.

Accordingly, an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status. Therefore, Walker could not receive any relief for his First Amendment retaliation-based claim, and the district court's dismissal of this claim was proper.

**E. Access to Grievance Procedures and to the Courts**

Walker's next claim, that his placement on modified access status limited his access to both state-created grievance procedures and to the courts, in violation of his First Amendment right to petition for redress, also fails. As the district court found, this Court and other courts have noted that placement on modified access status does not impinge upon a prisoner's ability to file either meritorious grievances in prison or actions in federal court. First, the fact that Walker's grievances must first be screened by a grievance officer prior to their consideration in the normal grievance process does not mean that he is unable to file non-frivolous grievances, nor that they will not be properly heard. *See, e.g.*, *Kennedy* v. *Tallio*, No. 01-1386, 2001 WL 1176400, at *2 (6th Cir. Sept. 26, 2001) (reaching this conclusion with regard to MDOC's modified access process). If, of course, a grievance officer improperly dismissed a non-frivolous claim filed by Walker, Walker could then petition a court for redress, but that has not happened here. Outside of such a situation, however, the modified access status process does not in any way impede Walker's ability to file non-frivolous grievances, and thus his First Amendment rights with regard to access to the prison grievance procedures have not been violated.

With regard to access to the courts, Walker's argument is that, as a result of the modified access process, he is unable to exhaust administrative remedies, and thus he cannot ever file a claim in federal court based on a non-frivolous grievance dismissed by a grievance officer. But this cannot be correct; if a grievance officer dismissed a non-frivolous complaint by Walker, that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g.*, *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies). Accordingly, this claim also must fail.

## F. Failure to Explain Reasons for Denying Grievances

Walker appears to claim that MDOC violated his constitutional rights when the grievance coordinator failed to explain the basis for his rejection of numerous grievances filed during the time when Walker was on modified access status. However, there is no constitutional right to a detailed opinion from a grievance coordinator in a prison grievance system, and Walker at all times could have filed suit in federal court had he believed the grievances were improperly dismissed. Indeed, he has actually done so on several occasions. Moreover, in the instant complaint, Walker does not appear to claim that the grievances he filed were improperly dismissed, nor did he include details of the relevant grievances. Accordingly, his complaint does not state a claim for which relief can be granted with regard to the grievance coordinators' failure to state the reasons for their dismissals of his grievances.

**G. Motion to Amend Judgment**

Finally, in his brief on appeal, Walker argues that the district court erred in denying his "Objection to Dismissal," which the district court treated as a motion to amend judgment under Federal Rule of Civil Procedure 59(e). However, while Walker did refer to additional "evidence"in this motion, consisting of more than 100 pages of allegedly dismissed grievances, he has not alleged or shown that any of this purported evidence was newly discovered. Nor has he alleged any error of law or change in controlling law that would require equitable relief. Accordingly, the district court did not abuse its discretion in denying the motion. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (requiring a showing of either newly discovered evidence or manifest error of law (including a change in controlling law) in order to grant a motion under Rule 59(e)).

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing the complaint is **AFFIRMED**.