**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0904n.06**
**Filed: November 17, 2005**

**Nos. 04-1805/1871**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ARTHUR JACKSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| JAMES MADERY, et al., | ) | District of Michigan |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: BOGGS, Chief Judge; and NORRIS and COOK, Circuit Judges.

PER CURIAM. Arthur Jackson, a Michigan state prisoner proceeding pro se, appeals a district court judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. In his complaint, he alleges violation of various constitutional rights by several employees of the Michigan Department of Corrections (MDOC). In his appellate brief he also alleges "Bias or Prejudice" and "Partiality," apparently on the part of the district court. For the reasons given below, we affirm the district court's dismissal of Jackson's complaint, and find his allegations of bias against the district court to be without merit.

I

Jackson's complaint names the following defendants: James Madery, a resident unit officer at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan; Marcelino Gonzales, a

sergeant at JCF; Patrick Makara, a lieutenant at JCF; Gregory Smoyer, an inspector at JCF; Brenda Schmeltz, grievance coordinator at JCF; Ralph Morgan, a JCF employee; Stephen Marschke, manager of internal affairs at MDOC; Michael Powell, manager, Prisoner Affairs section, MDOC; and the JCF Psychology Department. The claims against the JCF Psychology Department were dismissed by the district court early in the litigation on Eleventh Amendment immunity grounds. Jackson sued defendants in their individual and official capacities, seeking declaratory, monetary, and injunctive relief.

Jackson alleges a conspiracy among all of the defendants to deprive him of his constitutional rights. He alleges that he was placed on "modified access status," and that he had his right to file grievances denied by MDOC and JCF staff, in retaliation for his exercising his right to file a lawsuit and administrative grievances. He alleges that Madery, in collusion with fellow JCF Officer Steven Kronberg, retaliated against Jackson for filing a federal civil suit against Kronberg (*Jackson v. Kronberg*, case no. 02-73545 in the United States District Court for the Eastern District of Michigan), which led to this court's decision *Jackson v. Kronberg*, 111 F. App'x 815 (6th Cir. 2004). Jackson alleges that Madery made verbal threats against him, sexually assaulted him, and submitted false disciplinary reports against him. Jackson alleges that defendants conspired to violate his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments.

Defendants Madery, Schmeltz, Marschke, Gonzales, Makara, and Smoyer (Morgan and Powell evidently had not been served) moved to dismiss Jackson's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, they moved for summary judgment under Federal Rule of Civil Procedure 56, pursuant to the provision of Rule 12(b)

regarding conversion of a 12(b)(6) motion to a motion for summary judgment when matters outside

the pleadings are presented. The magistrate judge filed a report and recommendation advising that

the defendants' motion to dismiss, or for summary judgment, should be granted as to all defendants

except Madery, and that as to him, only the Eighth Amendment claim (regarding alleged sexual

abuse) should survive summary judgment. After reviewing the objections filed by the parties, the

district court adopted the magistrate judge's recommendations as to Jackson's retaliation, due

process, and equal protection claims, but concluded that Jackson also had failed to establish an

Eighth Amendment violation by Madery, and therefore dismissed Jackson's complaint in its entirety.

This appeal followed.

II

We review de novo the dismissal of a prisoner's complaint on the basis that it failed to state

a claim upon which relief can be granted. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir.

1997). In determining whether a prisoner has failed to state a claim, we construe his complaint in

the light most favorable to him, accept his factual allegations as true, and determine whether he can

prove any set of facts that would entitle him to relief. *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157

F.3d 453, 456 (6th Cir. 1998). We construe pro se complaints liberally, and will affirm a dismissal

of such a complaint only if it is "beyond doubt" that the plaintiff can prove no set of facts which

would support a grant of relief. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

We review de novo a district court's grant of summary judgment. *Minadeo v. ICI Paints*,

398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where there exists no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). In considering a motion for summary judgment, the district court must make all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Jackson alleges a conspiracy among all of the defendants to retaliate against him for filing his lawsuit against Kronberg. Jackson's conspiracy claims are vague and conclusory. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Jackson failed to provide any evidence that would support an allegation of conspiracy. As in *Gutierrez*, Jackson's allegations "lack the requisite material facts and specificity necessary to sustain a conspiracy claim," and thus are insufficient to withstand a motion for summary judgment. *Id.* at 1539.

As recommended by the magistrate judge, the district court dismissed Jackson's equal protection claim on the basis that Jackson had not asserted that he was discriminated against due to his membership in a protected class. Jackson's complaint does not appear to mention racial discrimination. He attached to his complaint copies of administrative grievances he had previously filed claiming "Racism is prevailing and concealing by a hate corrupted administration, threats, etc." and "ethnic intimidation, etc.," and calling Madery "racist." The grievances did not provide further specifics. Jackson's request for a preliminary injunction refers to unspecified hardships he is experiencing from "racist hateful white employees," but not in the context of an equal protection argument. Jackson's vague, conclusory allegations of racial discrimination are not enough to state an equal protection claim. "It is not enough for a complaint under § 1983 to contain mere

conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Jackson alleges that his First Amendment rights were violated because the defendants' actions were taken in retaliation for filing a lawsuit against Kronberg. He alleges in particular that he was placed on modified access status in retaliation for his filing a lawsuit against Kronberg, and that he was denied his right to file grievances by Schmeltz prior to the lawsuit against Kronberg, to keep him from exhausting state remedies, and then also after filing the lawsuit.

The elements of a First Amendment retaliation claim are: 1) the plaintiff engaged in protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Jackson met the first element of the test because he filed a lawsuit against Kronberg. A prisoner has a First Amendment right to file grievances against prison officials, if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Jackson fails to meet the second element, however.

This court has defined an "adverse action" as one "that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (citation omitted).

Nos. 04-1805/1871
Jackson v. Madery, et al.

In the Defendants' Motion for Dismissal, defendant Schmeltz, the grievance coordinator at the prison, described modified access status as follows:

> When a prisoner is on Modified Access, he is only allowed to obtain grievance forms from the grievance coordinator at the facility he is housed at. When making a request, he is to do so via a kite or letter, not a grievance form, however, he is obligated to provide details as if he was writing the grievance itself. If the request for the issue meets the criteria in PD 03.02.130, she would forward the prisoner a grievance form.

Schmeltz added, "[t]he fact that plaintiff was unable to have his requests granted is due only to the fact that he refused to follow instruction given and make appropriate requests."

Being placed on modified access status would not deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials, within the courts or the prison administrative system. We have held, in unpublished opinions, that placement on modified access status does not constitute an adverse action when the protected activity was filing administrative grievances. *See, e.g.*, *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) ("[A]n ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances."). Here, an ordinary person of reasonable firmness would not be deterred from either pursuing his right to sue in the courts or to file grievances within the administrative process.

Furthermore, Jackson did not meet the third element of a First Amendment retaliation claim. The third element involves the subjective motivations of the defendants. *Thaddeus-X*, 175 F.3d at 399. "[B]are allegations of malice would not suffice to establish a constitutional claim." *Ibid.* (internal quotation marks and citations omitted). According to *Thaddeus-X*, "[o]nce the plaintiff has

- 6 -

met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Ibid*.

As the magistrate judge correctly pointed out, "[t]here was no evidence to suggest that because Plaintiff filed a lawsuit against another prison guard (Kronberg), the Defendants possessed a retaliatory motive and placed him on modified access status." Report and Recommendation, March 22, 2005, at 8. We have previously noted that temporal proximity between the protected conduct and the retaliatory action alone "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad*, 379 F.3d at 417-18 (citation omitted). It appears from the docket sheet that *Jackson v. Kronberg*, case no. 02-73545, was filed in the Eastern District of Michigan on September 6, 2002. A memorandum from Mike Powell, manager of the MDOC Prison Affairs Section, notified Jackson on October 30, 2002 that he was being placed on modified access status "for filing frivolous grievances in violation of PD/OP 03.02.130." Jackson's lack of other evidence showing or suggesting causation, and his evident tendency to file grievances and complaints frequently, many of which were rejected because they did not meet the requirements of PD 03.02.130, weigh against holding that a genuine issue of material fact as to the third element is created solely on the basis of temporal proximity. Summary judgment is appropriate as to this claim.

Jackson submitted no evidence indicating that Schmeltz's actions in response to his grievances or requests for grievance forms were due to anything other than the reasons given in her

various responses. Bare allegations of malice do not suffice to establish a constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Jackson alleges that, after colluding with Kronberg, Madery "made gestures such as . . . Don't you know better that [sic] to sue JCF's prison guard(s) . . . We sill [sic] get you, its [sic] just a matter of time . . . There is a graveyard right across the street, so you won't have to travel far. . . Wait until you get a whiff of my unit reports." (Ellipses in Jackson's complaint.) Jackson alleges that Madery retaliated against him by committing sexual abuse, and appears to allege that the same alleged sexual abuse constituted cruel and unusual punishment in violation of the Eighth Amendment. Jackson claims that Madery committed sexual abuse/harassment by rubbing and grabbing Jackson's buttocks in a degrading and humiliating manner during a "shakedown" in the prison food area. Jackson immediately objected, pulled away, and asked to see one of Madery's superiors; Madery ordered Jackson to continue to submit to the shakedown, which Jackson refused to do. In statements taken shortly after the incident, three other inmates said they saw Madery rub or grab Jackson's buttocks in an unprofessional manner.

Taking Jackson's allegations and supporting material as true, the incident does not rise to the level of cruel and unusual punishment under the Eighth Amendment. In *Hudson v. McMillian*, 503 U.S. 1, 8 (1992), the Supreme Court stated the general test for Eighth Amendment claims: first, the alleged force should be "objectively harmful enough to establish a constitutional violation" (internal quotation marks omitted), and second, the official must have acted with a sufficiently culpable state of mind. The first, objective element, which focuses on whether an unnecessary and wanton infliction of pain was imposed, is "contextual and responsive to contemporary standards of

decency." *Id*. at 7, 8 (internal quotation marks and citation omitted). The Court noted that "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 9.

The Second Circuit, among other circuits, has held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). *See also Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997); *Jordan v. Gardner*, 986 F.2d 1521, 1524-31 (9th Cir. 1993) (en banc). The Second Circuit stated that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861. In *Boddie*, the plaintiff, a male prisoner, alleged that a female prison guard squeezed his hand, touched his penis, and made sexually suggestive comments, and on a separate occasion told him to take off his sweatshirt and twice pinned him to a door with her body. *Id*. at 859-60. The Second Circuit concluded that "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' Nor were the incidents cumulatively egregious in the harm they inflicted." *Id*. at 861. The alleged incidents, the court held, did "not involve a harm of federal constitutional proportions." *Ibid.* The alleged episode at issue here was isolated, brief, and not severe. While certainly to be condemned if true, it did not rise to the level of a violation of Jackson's constitutional right to be free from cruel and unusual punishment.

Nor can the incident constitute the basis for a retaliation claim against Madery, for it fails to amount to a chilling adverse action. It would not, either alone or taken together with the alleged

verbal threats against Jackson by Madery, deter a person of ordinary firmness from pursuing a lawsuit or administrative grievances.

Jackson also alleges that Madery filed false disciplinary reports against him in retaliation for filing the suit against Kronberg. Madery wrote two major misconduct reports against Jackson, one on January 24, 2003, for disobeying Madery's direct order during the incident described above that Jackson claims constituted sexual abuse, and another on January 30, 2003, also for disobeying a direct order. In each case, a staff official investigated the charges, and a hearing officer found Jackson guilty. Jackson fails to state a claim against Madery because Jackson was convicted of the misconduct charges. A finding of guilt based upon some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim." *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). The misconduct hearing reports written by the hearing officer show that there was some evidence to support the charges.

Jackson raises the allegedly false reports written by Madery as a due process claim as well. False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing. *See Cale v. Johnson*, 861 F.2d 943, 953 (6th Cir. 1988) (Nelson, J., concurring); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). We have also so held in two recent unpublished opinions, *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005), and *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004). Jackson was provided due process hearings for the misconduct charges; as such, his due process rights were not violated and he may not maintain a § 1983 claim for the allegedly false misconduct reports.

Jackson alleges that Smoyer wrote a "bogus ticket . . . retaliatory to harass, humiliate and to abuse." Smoyer wrote a major misconduct report against Jackson on February 12, 2003, for interference with administration of prison rules. Following an investigation, a hearing officer found Jackson not guilty of the charge on February 28, 2003. Jackson fails to state a retaliation claim, however, because his allegation does not support an inference that Smoyer wrote the ticket because of any protected conduct by Jackson. Bare allegations of malice do not suffice to establish a constitutional claim. *Crawford-El*, 523 U.S. at 588. Smoyer wrote the report more than five months after the filing of Jackson's suit against Kronberg. Under the circumstances here, that is not enough to raise a genuine issue of material fact as to retaliation based on temporal proximity alone.

For the foregoing reasons, we affirm the district court's decision dismissing Jackson's claims. Jackson's allegations on appeal that the district court was biased and prejudiced against him are without any basis.