NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0741n.06

No. 09-1616

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 24, 2010**
LEONARD GREEN, Clerk

BLAKE JOSEPH,                                    )
                                                )
        Plaintiff-Appellant,                    )
                                                )
                                                )   ON APPEAL FROM THE
v.                                              )   UNITED STATES DISTRICT
                                                )   COURT FOR THE WESTERN
                                                )   DISTRICT OF MICHIGAN
CINDI S. CURTIN, Warden; ROBERT SHARP,          )
Assistant Deputy Warden, sued in both capacities; )
MIKE HASKE, Resident Unit Manager, in both      )        **O P I N I O N**
capacities; DAVID CLIFFTON, Inspector, in both  )
capacities; UNKNOWN HAWKINS, Assistant          )
Deputy Warden, in both capacities; MICHAEL COX, )
Attorney General,                               )
                                                )
        Defendants-Appellees.                   )

BEFORE:    MOORE, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Blake Joseph, a Michigan inmate proceeding *pro se*, appeals a district court dismissal pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(c), of his 42 U.S.C. § 1983 civil rights claims.  Because Joseph has failed to state a cognizable due-process claim, we **AFFIRM** the judgment of the district court dismissing the claims and declining to exercise supplemental jurisdiction.

## I.  BACKGROUND

On September 3, 2008, while Joseph was confined in the general population at the Cooper Street Correctional Facility, a security level I prison, he received two major misconduct tickets and

was placed in temporary segregation. The following day, Joseph was transferred to the security level II Lakeland Correctional Facility, where he was also placed in temporary segregation. An administrative hearing was held on September 11, 2008 and Joseph was found guilty of both misconduct charges. On that same day, Assistant Deputy Warden Hawkins transferred Joseph from temporary segregation to the general population. On the following day, Hawkins informed Joseph that he had received notice from Inspector David Cliffton that felony criminal charges had been filed against Joseph. On September 15, Joseph was then transferred to the administrative segregation unit at the security level IV Oaks Correctional Facility ("OCF"). No hearing was held in regard to this transfer. On October 6, 2008, Joseph filed a grievance claiming that the failure to hold a hearing regarding the September 15 transfer to administrative segregation violated Michigan administrative rules and Joseph's federal due process rights. The prison official determined that the administrative rules did not require a second hearing to place Joseph in segregation because he was found guilty of a major misconduct. Joseph also pursued two levels of appeal, where he was denied each time. Joseph was released to the general population at OCF after 61 days in administrative segregation.

Joseph then filed this prisoner civil rights action under 42 U.S.C. § 1983 ("§ 1983") against several prison officials. Joseph first claimed that his placement in administrative segregation without a hearing violated his federal due process rights and possibly Michigan law. Second, Joseph claimed that his transfer to a security level IV prison violated his federal due process rights. For his stay in administrative segregation, Joseph seeks $50,000 in damages from *each* plaintiff. Further, Joseph seeks an order transferring him back to a security level II prison. After granting Joseph leave to proceed *in forma pauperis*, the district court determined that under the Prison Litigation Reform Act

("PLRA"), the court was required to dismiss the complaint for failure to state a claim upon which relief can be granted. *Joseph v. Curtin*, No. 1:09-cv-247, at 6 (W.D. Mich. Apr. 17, 2009) (citing 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c)). This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The PLRA requires district courts to first screen all civil cases brought by prisoners, and then to dismiss those claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing 28 U.S.C. § 1915A(b)). We conduct *de novo* review of a district court's order dismissing a complaint under the PLRA. *Id*. at 571-72. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id* (citation omitted); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citations omitted). However, we hold *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers" and may not uphold the dismissal because we find the plaintiff's allegations to be unlikely. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citations omitted).

*No. 09-1616*
*Joseph v. Curtin, et al.*

**B. Section 1983 Claims**

In order to "state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). While § 1983 provides a method for vindicating federal rights, it is not a source of substantive rights. Thus, a court evaluating a § 1983 claim must first identify the constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

Generally, an individual's conviction at trial and subsequent incarceration represents a valid deprivation of liberty in compliance with due process and other constitutional guarantees. *Harden-Bey v. Rutter*, 524 F.3d 789, 791-92 (6th Cir. 2008). What little liberty interest an inmate retains is generally limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Joseph's complaint fails to identify a protected liberty interest because it does not allege an atypical and significant hardship imposed by prison officials.

Joseph first alleges that his due process rights were violated because he was placed in administrative segregation without a hearing. Administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *receded from in part by Sandin*, 515 U.S. 472. Thus, we must determine if Joseph alleges that his administrative segregation "impose[d] an 'atypical and significant' hardship [on Joseph] 'in relation to the ordinary incidents of prison life.'"

- 4 -

*Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Sandin*, 515 U.S. at 484). Generally courts will consider the nature *and* duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 793 (collecting cases that use this analysis). In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g.*, *Jones*, 155 F.3d at 812-13 (collecting cases that stand for that proposition); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship"). In this circuit, we have held that the prisoner presented a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the ordinary incidents of prison life" in extreme circumstances, such as when the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation. *Harden-Bey*, 524 F.3d at 795.

Here, there is nothing in Joseph's complaint that suggests there was anything "atypical and significant" about Joseph's 61-day stay in administrative segregation. Simply disagreeing with being placed in administrative segregation does not make it "atypical and significant." *Harden-Bey*, 524 F.3d at 796 ("[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim" under § 1983.). Furthermore, even assuming Joseph was correct that Michigan administrative rules required a hearing prior to placement in administrative segregation,

such a regulation would not create a liberty interest even if the regulation incorporates "language of an unmistakably mandatory character." *Sandin*, 515 U.S. at 480; *Rimmer-Bey*, 62 F.3d at 790-91 (holding there was no liberty interest even if Michigan prison regulations contained mandatory language providing an administrative hearing before placement in administrative segregation). Because Joseph has failed to provide any reason why his placement in administrative segregation was "atypical and significant," we hold that he has failed to state a cognizable due-process claim.

Next, Joseph claims that his transfer to a security level IV facility violated his due process rights. The Supreme Court has recognized that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *see also Williams v. Bass*, 63 F.3d 483, 485 (1995) ("[A]n inmate possesses no inherent constitutional right to placement in any particular prison or in any particular section within the prison system.") (citations omitted). Only in the most extreme circumstances has the Court recognized a liberty interest in avoiding transfer to a prison with more adverse conditions. *Austin*, 545 U.S. at 223-24 (finding that confinement in a "Supermax" prison was "atypical and significant" because prisoners were kept in conditions similar to solitary confinement and lost their ability to seek parole, but that standing alone these conditions might not create a liberty interest). Joseph's complaint does not include any allegations about the conditions of the security level IV prison to suggest that it imposes an atypical and significant hardship. Indeed, in Michigan there are actually two higher security levels than level IV. Mich. Admin. Code R. 791.4401. Because Joseph has not demonstrated that a liberty interest was implicated in his transfer to a security level IV prison, we hold that he has failed to state a claim.

## C. State-law Claims

It is unclear whether Joseph sought to raise any state-law claims in his complaint. Perhaps acting under an abundance of caution, the district court declined to exercise jurisdiction over any state-law claims that Joseph might have had regarding his placement in administrative segregation without a hearing. Without a deprivation of some federal right, § 1983 generally provides no redress for claims under state law. *Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994). Furthermore, district courts may decline to exercise supplemental jurisdiction over a state-law claim if they have properly dismissed all of the federal law claims in the complaint. 28 U.S.C. § 1367(c)(3). In this case, the district court's decision to decline to exercise supplement jurisdiction over any possible state-law claims was well within its discretion.

## III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.