UNITED STATES DISTRICT COURT 
 WESTERN DISTRICT OF MICHIGAN 
 SOUTHERN DIVISION 
 ______ 

DAMIAN ASIDIAS WHEATLEY, 

 Plaintiff, Case No. 1:24-cv-983 

v. Honorable Paul L. Maloney 

GARY STUMP et al., 

 Defendants. 
____________________________/ 
 OPINION 
This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court 
will grant Plaintiff leave to proceed in forma pauperis. (ECF No. 2.) Under the Prison Litigation 
Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss 
any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state 
a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from 
such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff’s 
pro se complaint indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and accept 
Plaintiff’s allegations as true, unless they are clearly irrational or wholly incredible. Denton v. 
Hernandez, 504 U.S. 25, 33 (1992). 
Applying these standards, the Court will dismiss Plaintiff’s complaint for failure to state a 
claim against Defendants Moyer and McCyentyre. The Court will also dismiss, for failure to state 
a claim, the following claims against Defendants Stump, Klein, Demores, and Valdez: 
(1) Plaintiff’s official capacity claims; (2) any personal capacity claims for declaratory relief; 
(3) any Eighth Amendment claims premised upon verbal and sexual harassment; and (4) Plaintiff’s 
Fourteenth Amendment due process and equal protection claims. The following personal capacity 
claims for damages against Defendants Stump, Klein, Demores, and Valdez remain in the case: 
(1) Plaintiff’s Fourth Amendment claims; and (2) Plaintiff’s Eighth Amendment excessive force 
claims. 
 Discussion 

Factual Allegations 
Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) 
at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The 
events about which Plaintiff complains, however, occurred at the Bellamy Creek Correctional 
Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC personnel in their 
official and personal capacities: Sergeant Gary Stump; Correctional Officers Joshua Klein, 
Unknown Demores, and Unknown Valdez; Inspector Unknown Moyer; and Registered Nurse 
Unknown McCyentyre. 
Plaintiff alleges that on January 18, 2022, he was being escorted “over to 8 block from unit 
4.” (Compl., ECF No. 1, PageID.14.) Plaintiff contends that “multiple defendants [were] purposely 
telling [him] they [were] going to hurt” him. (Id.) Defendant Demores had Plaintiff “bent over 

fo[r]ward to the point where [Plaintiff] was trip[p]ing over [his] own feet trying to keep up.” (Id., 
PageID.14–15.) Defendant Demores had Plaintiff’s arms in the air and had his own arms wrapped 
around Plaintiff’s, causing Plaintiff pain. (Id., PageID.15.) Plaintiff alleges further that he was 
“also getting choked out to the point where Plaintiff lost consciousness.” (Id.) Plaintiff claims that 
Defendants Stump, Valdez, and Demores assaulted Plaintiff “for at least 3 minutes” while 
escorting him to segregation, and that they ignored Plaintiff’s “calls for help.” (Id.) Plaintiff states 
that he was handcuffed when the assault occurred. (Id.) In his grievance regarding the incident, 
Plaintiff indicated that while bent over, his pants were ripped off in front of the whole housing 
unit, and his genitals were exposed, causing other inmates to laugh. (ECF No. 1-1, PageID.24.) 
Plaintiff’s shirt was cut off as well. (Id.) His grievances indicate that Defendant Klein was part of 
this incident as well. (Id., PageID.24–25.) 
That same day, Plaintiff filed a grievance against Defendant Klein. (Compl., ECF No. 1, 
PageID.11.) Plaintiff claims that Defendant Klein told Plaintiff that he “had [his] kids[’] mother[’s] 

address and numbers.” (Id.) According to Plaintiff, Defendant Klein was “yelling her name and 
address to everyone.” (Id.) Defendant Klein told Plaintiff that “he would sexuall[y] get with her 
just to hurt [Plaintiff].” (Id.) Plaintiff’s grievance was denied. (Id.) 
Plaintiff alleges that the assault caused him to have serious shoulder pain and also left 
bruises on his neck. (Id., PageID.6.) Plaintiff filed a Prison Rape Elimination Act (PREA) 
grievance on January 21, 2022. (Id., PageID.7.) On January 27, 2022, Defendant Moyer returned 
the grievance with a note that Plaintiff needed to refile it as a regular grievance. (Id.) Plaintiff 
refiled the grievance, and Defendant Moyer denied it, stating that the grievance raised a duplicate 
issue. (Id.) 

Plaintiff was released from segregation (8 block) on February 9, 2022. (Id.) Plaintiff went 
to his assigned cell. (Id.) Around 3:00 p.m., Plaintiff was “escorted to the box.” (Id.) Plaintiff 
alleges that when he was released from segregation, he was told that he did not have to go to 
administrative segregation. (Id.) He claims, however, that once “Defendants found out they called 
and got [him] put in administrative segregation even though [Plaintiff] already did [his] time for 
[his] tickets.” (Id.) 
While on the way to segregation, Plaintiff was told that “they needed bed space.” (Id., 
PageID.9.) He was “taken to the property room cages and waited to be housed.” (Id.) While 
Plaintiff was in the property room cage, Defendant Demores walked in and told Plaintiff that he 
was taking him to administrative segregation and that if Plaintiff “messed around,” Defendant 
Demores would break his arm. (Id.) Plaintiff alleges that Defendant Demores “stated all this in a 
very aggressive voice like he did with the first incident where [he] popped Plaintiff’s arm out of 
place.” (Id.) 
Plaintiff also states that on an unknown date, Defendant Klein told Plaintiff that “he would 

beat [him] again like he did to [Plaintiff] while he was a staff member at a placement called Turning 
Point.” (Id., PageID.10.) Plaintiff explains that he was at the Turning Point youth center in 2013 
and 2014, and while there, Defendant Klein assaulted him. (Id., PageID.18.) Plaintiff states that 
Defendant Klein eventually assaulted him while at IBC, presumably a reference to the January 18, 
2022, incident. (Id., PageID.10.) Plaintiff filed a grievance about the incident. (Id.) However, an 
unknown sergeant told Plaintiff that he would not get any of his property unless he signed off on 
the grievance Plaintiff had submitted against Defendant Klein. (Id., PageID.9.) Plaintiff did so 
because he was in “fear of losing all [his] property.” (Id.) 
On March 3, 2022, Plaintiff “went to court on a forgery ticket for trying to file [his] Step 2 

for [his] grievance.” (Id., PageID.8.) Plaintiff felt that he was “a victim of IBC administrative 
punishment due to filing grievances on the staff/defendants.” (Id.) Plaintiff “beat the ticket on a 
no[t] guilty verdict.” (Id.) 
Plaintiff claims that he was in administrative segregation for 6 months. (Id., PageID.10.) 
He was in “constant fear of the defendants contaminating [his] food.” (Id.) Plaintiff lost 55 pounds 
while in administrative segregation. (Id.) Plaintiff alleges that he was “a constant target for the 
staff because [he] was filing grievance[s] and following the proper steps to get help.” (Id.) Plaintiff 
avers that he was constantly told by staff that “they would set [Plaintiff] up if [he did not] stop.” 
(Id.) Plaintiff suggests that he was kept in administrative segregation as punishment for filing 
grievances, and that he was “denied access to [his] security classification meetings about [him] 
getting out and [returning] to general population.” (Id., PageID.11.) 
Plaintiff goes on to state that Defendant McCyentyre “intentionally [did not] report injuries 
and put Plaintiff on a callout to be seen by medical staff.” (Id., PageID.19.) Plaintiff’s exhibits 
show that on January 30, 2022, Plaintiff submitted a medical kite stating that his shoulder was 

possibly fractured or out of place. (ECF No. 1-8, PageID.32.) Plaintiff indicated that he could 
barely move it, and that when he did, he heard a pop. (Id.) Non-party Registered Nurse Katherine 
West told Plaintiff that normal operations would resume “as resources allow[ed]” because of the 
COVID-19 pandemic, and that Plaintiff should “follow the treatment plan currently in place.” (Id.) 
Nurse West also provided a list of stretches to Plaintiff and noted he could purchase ibuprofen or 
acetaminophen from the prisoner store. (Id.) Plaintiff submitted another medical kite on February 
7, 2022, stating that the stretches were making the pain worse and that he could not get ibuprofen 
while on 8 block. (ECF No. 1-9, PageID.33.) Non-party Registered Nurse Jerald Ritz responded 
that Plaintiff would be scheduled for an assessment. (Id.) 

Based upon the foregoing, Plaintiff asserts Eighth Amendment excessive force and failure 
to provide medical care claims. (Compl., ECF No. 1, PageID.3.) Plaintiff also suggests that 
Defendants violated his Fourteenth Amendment due process and equal protection rights. (Id., 
PageID.14.) Further, Plaintiff contends that he was verbally and sexually harassed in violation of 
his Eighth Amendment rights, and that he was forced to undergo an improper strip search, which 
the Court construes as an alleged violation of the Fourth Amendment. (Id., PageID.13, 16–18.) 
Plaintiff also avers that Defendant Moyer violated his rights by “not giving [him] a proper or fair 
process for [his] grievances and tickets.” (Id., PageID.16.) Plaintiff seeks a declaratory judgment, 
as well as compensatory and punitive damages. (Id., PageID.21–22.) 
Failure to State a Claim 
A complaint may be dismissed for failure to state a claim if it fails “to give the defendant 
fair notice of what the . . . claim is and the grounds upon which it rests.” Bell Atl. Corp. v. Twombly, 
550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint 
need not contain detailed factual allegations, a plaintiff’s allegations must include more than labels 

and conclusions. Id.; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (“Threadbare recitals of the 
elements of a cause of action, supported by mere conclusory statements, do not suffice.”). The 
court must determine whether the complaint contains “enough facts to state a claim to relief that 
is plausible on its face.” Twombly, 550 U.S. at 570. “A claim has facial plausibility when the 
plaintiff pleads factual content that allows the court to draw the reasonable inference that the 
defendant is liable for the misconduct alleged.” Iqbal, 556 U.S. at 679. Although the plausibility 
standard is not equivalent to a “‘probability requirement,’ . . . it asks for more than a sheer 
possibility that a defendant has acted unlawfully.” Id. at 678 (quoting Twombly, 550 U.S. at 556). 
“[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of 
misconduct, the complaint has alleged—but it has not ‘show[n]’—that the pleader is entitled to 

relief.” Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); see also Hill v. Lappin, 630 F.3d 468, 470–71 
(6th Cir. 2010) (holding that the Twombly/Iqbal plausibility standard applies to dismissals of 
prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii). 
To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right 
secured by the federal Constitution or laws and must show that the deprivation was committed by 
a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Street v. Corr. 
Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating 
federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to 
identify the specific constitutional right allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 
(1994). 
A. Official Capacity Claims 
As noted supra, Plaintiff has sued Defendants in their official and personal capacities. 
Although an action against a defendant in his or her individual capacity intends to impose liability 

on the specified individual, an action against the same defendant in his or her official capacity 
intends to impose liability only on the entity that they represent. See Alkire v. Irving, 330 F.3d 802, 
810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). A suit against an 
individual in his official capacity is equivalent to a suit brought against the governmental entity: 
in this case, the MDOC. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71 (1989); Matthews 
v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under 
the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or 
Congress has expressly abrogated Eleventh Amendment immunity by statute. See Pennhurst State 
Sch. & Hosp. v. Halderman, 465 U.S. 89, 98–101 (1984); Alabama v. Pugh, 438 U.S. 781, 782 
(1978); O’Hara v. Wigginton, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly 

abrogated Eleventh Amendment immunity by statute, Quern v. Jordan, 440 U.S. 332, 341 (1979), 
and the State of Michigan has not consented to civil rights suits in federal court. Abick v. Michigan, 
803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for 
the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit 
under the Eleventh Amendment. See, e.g., Harrison v. Michigan, 722 F.3d 768, 771 (6th Cir. 
2013); McCoy v. Michigan, 369 F. App’x 646, 653–54 (6th Cir. 2010). 
Here, Plaintiff seeks declaratory relief, as well as damages. Official capacity defendants, 
however, are absolutely immune from monetary damages. See Will, 491 U.S. at 71; Turker v. Ohio 
Dep’t of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir. 1988). Defendants are, therefore, entitled to 
immunity with respect to Plaintiff’s official capacity claims for damages. 
However, an official capacity action seeking declaratory and injunctive relief constitutes 
an exception to sovereign immunity. See Ex Parte Young, 209 U.S. 123, 159–60 (1908) (holding 
that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state 

official). Importantly, “Ex parte Young can only be used to avoid a state’s sovereign immunity 
when a ‘complaint alleges an ongoing violation of federal law and seeks relief properly 
characterized as prospective.’” Ladd v. Marchbanks, 971 F.3d 574, 581 (6th Cir. 2020) (quoting 
Verizon Md. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 645 (2002)). 
Plaintiff’s complaint does not allege an ongoing violation of federal law or seek relief 
properly characterized as prospective. Plaintiff has been transferred from IBC to DRF. The Sixth 
Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive 
relief. Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996). Underlying the rule is the premise that 
such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated 

probability that he is in immediate danger of sustaining direct future injury as the result of the 
challenged official conduct. Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Past exposure to an 
isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be 
subjected to the illegal conduct again. See, e.g., Lyons, 461 U.S. at 102; O’Shea v. Littleton, 414 
U.S. 488, 495– 96 (1974). A court should assume that, absent an official policy or practice urging 
unconstitutional behavior, individual government officials will act constitutionally. Lyons, 461 
U.S. at 102; O’Shea, 414 U.S. at 495–96. Accordingly, Plaintiff cannot maintain any official 
capacity claims for declaratory relief, and his official capacity claims will be dismissed in their 
entirety.1 
B. Personal Capacity Claims 
 1. Fourth Amendment Claims 
Plaintiff asserts that during the January 18, 2022, incident involving Defendants Stump, 
Valdez, Demores, and Klein, Plaintiff’s pants were ripped off, his shirt was cut off, and he was 

strip-searched in front of other inmates. The Court has construed Plaintiff’s complaint to assert 
Fourth Amendment claims premised upon this allegedly improper strip search. 
Both the Supreme Court and the Sixth Circuit have recognized that, under the Fourth 
Amendment, prisoners and detainees may be subjected to strip searches and body-cavity searches 
without individualized suspicion. See Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 333– 
34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct 
visual body-cavity searches upon inmates at the time they are admitted to the general jail 
population); Stoudemire v. Mich. Dep’t of Corr., 705 F.3d 560, 575 (6th Cir. 2013) (noting that 
“suspicionless strip searches [are] permissible as a matter of constitutional law”); see also Salem 
v. Mich. Dep’t of Corr., 643 F. App’x 526, 529 (6th Cir. 2016). Nevertheless, strip searches “may 

be unreasonable by virtue of the way in which [they are] conducted.” Williams v. City of Cleveland, 
771 F.3d 945, 952 (6th Cir. 2014) (citing Stoudemire, 705 F.3d at 574) (holding that searches must 
be conducted in a manner that is reasonably related to the jail’s legitimate objectives and that 
allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary 
conditions and in full view of other prisoners were sufficient to state a claim for unreasonable 

1 To the extent Plaintiff seeks declaratory relief against Defendants in their personal capacities, 
such claims will be dismissed for the same reason as Plaintiff’s claims for declaratory relief against 
Defendants in their official capacities. 
search and seizure). In determining the reasonableness of a search, courts must consider the scope 
of the particular intrusion, the manner in which it is conducted, the justification for initiating it, 
and the place in which it is conducted. Stoudemire, 705 F.3d at 572 (citing Bell v. Wolfish, 441 
U.S. 520, 559 (1979)). 
“There is no question that strip searches may be unpleasant, humiliating, and embarrassing 

to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional 
violation.” Calhoun v. DeTella, 319 F.3d 936, 939 (6th Cir. 2003). The Sixth Circuit has 
recognized some limited circumstances in which a prison strip search may implicate the Fourth 
Amendment. See, e.g., Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing the 
facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners were 
allegedly strip searched in the prison yard in the presence of other inmates and female officers); 
Kent v. Johnson, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (holding that a Fourth Amendment 
challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and 
continuous surveillance by female officers was facially valid). 

As noted above, Plaintiff suggests that the search occurred in the housing unit in full view 
of other inmates. Taking Plaintiff’s allegations as true, as the Court must at this stage of 
proceedings, Plaintiff’s Fourth Amendment claims against Defendants Stump, Valdez, Demores, 
and Klein regarding the strip search may not be dismissed on initial review.2 

2 To the extent that Plaintiff contends the strip search itself violated his Eighth Amendment rights, 
the Sixth Circuit has held that an Eighth Amendment claim is not cognizable when the plaintiff 
has not alleged any physical injury from the strip search. See Jackson v. Herrington, 393 F. App’x 
348, 354 (6th Cir. 2010). Although Plaintiff suggests that Defendants Stump, Valdez, Demores, 
and Klein used excessive force against him during the incident that occurred on January 18, 2022, 
Plaintiff’s complaint is devoid of facts suggesting that the strip search itself caused him physical 
injury. 
 2. Eighth Amendment Claims 
 a. Excessive Force 
Plaintiff alleges that Defendants Stump, Valdez, Demores, and Klein violated his Eighth 
Amendment rights by using excessive force against him on January 18, 2022. 
As relevant to excessive force claims, the Eighth Amendment prohibits conditions of 
confinement which, although not physically barbarous, “involve the unnecessary and wanton 

infliction of pain.” Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quoting Gregg v. Georgia, 428 
U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are 
“totally without penological justification.” Id. However, not every shove or restraint gives rise to 
a constitutional violation. Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986); see also Hudson 
v. McMillian, 503 U.S. 1, 9 (1992). “On occasion, ‘[t]he maintenance of prison security and 
discipline may require that inmates be subjected to physical contact actionable as assault under 
common law.’” Cordell v. McKinney, 759 F.3d 573, 580 (6th Cir. 2014) (quoting Combs v. 
Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth 
Amendment when their “offending conduct reflects an unnecessary and wanton infliction of pain.” 
Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Pelfrey v. Chambers, 43 F.3d 1034, 

1037 (6th Cir. 1995)); Bailey v. Golladay, 421 F. App’x 579, 582 (6th Cir. 2011). 
There is an objective component and a subjective component to this type of Eighth 
Amendment claim. Santiago v. Ringle, 734 F.3d 585, 590 (6th Cir. 2013) (citing Comstock v. 
McCrary, 273 F.3d 693, 702 (6th Cir. 2001)). First, “[t]he subjective component focuses on the 
state of mind of the prison officials.” Williams, 631 F.3d at 383. Courts ask “whether force was 
applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to 
cause harm.” Hudson, 503 U.S. at 7. Second, “[t]he objective component requires the pain inflicted 
to be ‘sufficiently serious.’” Williams, 631 F.3d at 383 (quoting Wilson v. Seiter, 501 U.S. 294, 
298 (1991)). “The Eighth Amendment’s prohibition of ‘cruel and unusual’ punishments 
necessarily excludes from constitutional recognition de minimis uses of physical force, provided 
that the use of force is not of a sort ‘repugnant to the conscience of mankind.’” Hudson, 503 U.S. 
at 9–10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). The objective component requires 
a “contextual” investigation that is “responsive to ‘contemporary standards of decency.’” Id. at 8 

(quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner’s injury 
may help determine the amount of force used by the prison official, it is not dispositive of whether 
an Eighth Amendment violation has occurred. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). “When 
prison officials maliciously and sadistically use force to cause harm, contemporary standards of 
decency always are violated . . . [w]hether or not significant injury is evident.” Hudson, 503 U.S. 
at 9. 
As set forth above, Plaintiff alleges that on January 18, 2022, he was being escorted over 
to 8 block. Defendant Demores had Plaintiff “bent over fo[r]ward to the point where [Plaintiff] 
was trip[p]ing over [his] own feet trying to keep up.” (Compl., ECF No. 1, PageID.14–15.) 

Defendant Demores had Plaintiff’s arms in the air and had his own arms wrapped around 
Plaintiff’s, causing Plaintiff pain. (Id., PageID.15.) Plaintiff alleges further that he was “also 
getting choked out to the point where Plaintiff lost consciousness.” (Id.) Plaintiff claims that 
Defendants Stump, Valdez, Demores, and Klein assaulted Plaintiff “for at least 3 minutes” while 
escorting him to segregation, and that they ignored Plaintiff’s “calls for help.” (Id.; see also ECF 
No. 1-1, PageID.24–25.) Plaintiff states that he was handcuffed when the assault occurred. 
(Compl., ECF No. 1, PageID.15.) 
At this stage of the proceedings, the Court must take Plaintiff’s factual allegations as true 
and in the light most favorable to him. Although Plaintiff’s allegations lack specificity, particularly 
as to how Defendants Stump, Valdez, and Klein assaulted him, the Court will not dismiss 
Plaintiff’s Eighth Amendment excessive force claims against Defendants Stump, Valdez, 
Demores, and Klein on initial review. 
 b. Verbal and Sexual Harassment 
The Court has construed Plaintiff’s complaint to assert Eighth Amendment claims 

premised upon verbal and sexual harassment against Defendants Stump, Valdez, Demores, and 
Klein. Plaintiff contends that during the incident on January 18, 2022, these individuals “sexually 
humiliated” him during the allegedly improper strip search. (Compl., ECF No. 1, PageID.13.) 
Plaintiff alleges further that Defendant Klein harassed him by mentioning that he would 
“sexuall[y] get with” the mother of Plaintiff’s children “just to hurt [Plaintiff].” (Id., PageID.11.) 
Moreover, Plaintiff avers that on February 9, 2022, Defendant Demores threatened to break 
Plaintiff’s arm if Plaintiff “messed around.” (Id., PageID.9.) 
First, with respect to the comments allegedly made by Defendants Klein and Demores, the 
use of harassing, degrading, or threatening language by a prison official, although unprofessional 
and deplorable, does not rise to constitutional dimensions. See Ivey v. Wilson, 832 F.2d 950, 954–

55 (6th Cir. 1987) (per curiam); see also Johnson v. Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004) 
(holding that harassment and verbal abuse do not constitute the type of infliction of pain that the 
Eighth Amendment prohibits); Wingo v. Tenn. Dep’t of Corr., 499 F. App’x 453, 455 (6th Cir. 
2012) (noting that “[v]erbal harassment or idle threats by a state actor do not create a constitutional 
violation and are insufficient to support a section 1983 claim for relief” (citing Ivey, 832 F.2d 
at 955)); Miller v. Wertanen, 109 F. App’x 64, 65 (6th Cir. 2004) (affirming district court’s 
conclusion that verbal harassment in the form of a threatened sexual assault “was not punishment 
that violated Miller’s constitutional rights” (citing Ivey, 832 F.2d at 955)); Murray v. U.S. Bureau 
of Prisons, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (“Although we do not 
condone the alleged statements, the Eighth Amendment does not afford us the power to correct 
every action, statement, or attitude of a prison official with which we might disagree.”).3 
Accordingly, any intended Eighth Amendment claims premised upon Defendants Demores and 
Klein’s verbal harassment will be dismissed. 
With respect to Plaintiff’s assertion that he was “sexually humiliated” by Defendants 

Stump, Demores, Valdez, and Klein on January 18, 2022, “[f]ederal courts have long held that 
sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the 
sexual abuse is perpetrated by other inmates or by guards.” Rafferty v. Trumbull Cnty., 915 F.3d 
1087, 1095 (6th Cir. 2019) (citations omitted); Bishop v. Hackel, 636 F.3d 757, 761 (6th Cir. 2011) 
(discussing inmate abuse); Washington v. Hively, 695 F.3d 641, 642 (7th Cir. 2012) (discussing 
abuse by guards). 
However, some courts, including the Sixth Circuit, have held that minor, isolated incidents 
of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth 
Amendment violation. See, e.g., Solomon v. Mich. Dep't of Corr., 478 F. App’x 318, 320–21 (6th 

Cir. 2012) (finding that two “brief” incidents of physical contact during pat-down searches, 
including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to 
the level of a constitutional violation); Jackson v. Madery, 158 F. App’x 656, 662 (6th Cir. 2005), 
abrogated on other grounds by Maben v. Thelen, 887 F.3d 252, 266–67 (6th Cir. 2018) 
(concluding that correctional officer’s conduct in allegedly rubbing and grabbing prisoner’s 

3 In Small v. Brock, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit concluded that “unprovoked 
and repeated threats to a prisoner’s life, combined with a demonstrated means to immediately carry 
out such threat constitute[d] conduct so objectively serious as to be ‘antithetical to human 
dignity.’” Id. at 541 (quoting Hope v. Pelzer, 536 U.S. 730, 745 (2002)). The conduct in the present 
case did not involve either a threat to Plaintiff’s life or any demonstration of the means to carry it 
out. 
buttocks in degrading manner was “isolated, brief, and not severe” and so failed to meet Eighth 
Amendment standards); Johnson v. Ward, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 
2000) (holding that male prisoner’s claim that a male officer placed his hand on the prisoner's 
buttock in a sexual manner and made an offensive sexual remark did not meet the objective 
component of the Eighth Amendment); Berryhill v. Schriro, 137 F.3d 1073, 1075 (8th Cir. 1998) 

(finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his 
buttocks could not be construed as sexual assault). 
In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the 
Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed 
a female prisoner by demanding on multiple occasions that the prisoner expose herself and 
masturbate while the official watched and intimidated her into complying. Rafferty, 915 F.3d 
at 1095–96. The Rafferty court noted that, in light of the coercive dynamic of the relationship 
between prison staff and prisoners, such demands amount to sexual abuse. Id. at 1096. 
Rafferty, however, is distinguishable from Plaintiff’s claim. Here, Plaintiff alleges only that 

he was “sexually humiliated” during the incident that occurred on January 18, 2022. He has not 
alleged that any of the defendants involved in that incident (Stump, Valdez, Demores, and Klein) 
made sexual comments or that they demanded that Plaintiff engage in sexual conduct. Moreover, 
while the Court does not minimize Plaintiff’s experience, nothing in the complaint suggests that 
any of these individuals physically touched Plaintiff in a sexual way. Plaintiff’s claims concerning 
the strip search are more properly addressed under the Fourth Amendment, as set forth supra. 
Accordingly, any Eighth Amendment claims against Defendants Stump, Valdez, Demores, and 
Klein premised upon sexual harassment will also be dismissed. 
 c. Denial of Medical Care 
Plaintiff contends that Defendant McCyentyre violated his Eighth Amendment rights by 
“intentionally [failing to] report injuries and put Plaintiff on a callout to be seen by medical staff.” 
(Compl., ECF No. 1, PageId.19.) 
The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. 

Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care 
to incarcerated individuals, as a failure to provide such care would result in unnecessary suffering 
without serving any penological purpose. Estelle v. Gamble, 429 U.S. 97, 103 (1976) “The 
infliction of such unnecessary suffering is inconsistent with contemporary standards of decency.” 
Id. at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent 
to the serious medical needs of a prisoner. Id. at 104; Comstock v. McCrary, 273 F.3d 693, 702 
(6th Cir. 2001). 
“To satisfy the subjective component, the plaintiff must allege facts which, if true, would 
show that the official being sued subjectively perceived facts from which to infer substantial risk 
to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.” 

Comstock, 273 F.3d at 703 (citing Farmer, 511 U.S. at 837). Deliberate indifference “entails 
something more than mere negligence,” but can be “satisfied by something less than acts or 
omissions for the very purpose of causing harm or with knowledge that harm will result.” Farmer, 
511 U.S. at 835. 
Not every claim by a prisoner that he has received inadequate medical treatment states a 
violation of the Eighth Amendment. Estelle, 429 U.S. at 105. As the Supreme Court explained: 
[A]n inadvertent failure to provide adequate medical care cannot be said to 
constitute an unnecessary and wanton infliction of pain or to be repugnant to the 
conscience of mankind. Thus, a complaint that a physician has been negligent in 
diagnosing or treating a medical condition does not state a valid claim of medical 
mistreatment under the Eighth Amendment. Medical malpractice does not become 
a constitutional violation merely because the victim is a prisoner. In order to state 
a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to 
evidence deliberate indifference to serious medical needs. 
Id. at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison 
medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state 
a deliberate indifference claim. Briggs v. Westcomb, 801 F. App’x 956, 959 (6th Cir. 2020); 
Rhinehart v. Scutt, 894 F.3d 721, 750–51 (6th Cir. 2018); Darrah v. Krisher, 865 F.3d 361, 372 
(6th Cir. 2017); Mitchell v. Hininger, 553 F. App’x 602, 605 (2014). 
The Sixth Circuit distinguishes “between cases where the complaint alleges a complete 
denial of medical care and those cases where the claim is that a prisoner received inadequate 
medical treatment.” Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). “Where a prisoner 
has received some medical attention and the dispute is over the adequacy of the treatment, federal 
courts are generally reluctant to second guess medical judgments and to constitutionalize claims 
which sound in state tort law.” Id.; see also Rouster v. Cnty. of Saginaw, 749 F.3d 437, 448 (6th 
Cir. 2014) (quoting Jones v. Muskegon Cnty., 625 F.3d 935, 944 (6th Cir. 2010)). Further, “[w]here 
the claimant received treatment for his condition, as here, he must show that his treatment was ‘so 

woefully inadequate as to amount to no treatment at all.’” Mitchell, 553 F. App’x at 605 (quoting 
Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he 
received was “so grossly incompetent, inadequate, or excessive as to shock the conscience or to 
be intolerable to fundamental fairness.” See Miller v. Calhoun Cnty., 408 F.3d 803, 819 (6th Cir. 
2005) (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (6th Cir. 1989)). 
Here, even assuming that Plaintiff’s shoulder condition constitutes a serious medical need, 
Plaintiff’s claim against Defendant McCyentyre is entirely premised upon speculation and 
conjecture. Although Plaintiff alleges in a conclusory manner that Defendant McCyentyre 
“intentionally [did not] report injuries and put Plaintiff on a callout to be seen by medical staff,” 
Plaintiff alleges no facts and provides no explanation about his assertion that McCyentyre did not 
“report injuries.” (Compl., ECF No. 1, PageID.19.) Indeed, Plaintiff acknowledges that Defendant 
McCyentyre put Plaintiff on a callout to be seen by medical staff, suggesting that McCyentyre 
worked to facilitate Plaintiff’s receipt of medical care, not to prevent him from receiving such care. 
Furthermore, although Plaintiff presents the above-discussed conclusory allegation against 

Defendant McCyentyre, Plaintiff’s complaint is wholly devoid of facts from which the Court could 
infer that Defendant McCyentyre was aware of Plaintiff’s shoulder condition and deliberately 
failed to provide treatment. Plaintiff has attached two medical kites to his complaint; however, 
those kites were reviewed by two other registered nurses, not Defendant McCyentyre. Plaintiff’s 
complaint, as pleaded, is simply insufficient to maintain an Eighth Amendment claim for denial 
of medical care. Accordingly, Plaintiff’s Eighth Amendment claim against Defendant McCyentyre 
will be dismissed. 
 3. Fourteenth Amendment Claims 
 a. Procedural Due Process 
The court has construed Plaintiff’s complaint to assert a procedural due process claim 
premised upon his 6-month placement in administrative segregation. 

The Supreme Court has held that placement in segregation “is the sort of confinement that 
inmates should reasonably anticipate receiving at some point in their incarceration.” Hewitt v. 
Helms, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in “extreme 
circumstances.” Joseph v. Curtin, 410 F. App’x 865, 868 (6th Cir. 2010). Generally, courts will 
consider the nature and duration of a stay in segregation to determine whether it imposes an 
“atypical and significant hardship.” Harden-Bey v. Rutter, 524 F.3d 789, 794 (6th. Cir. 2008). 
In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court concluded that the 
segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical 
and significant hardship. Sandin, 515 U.S. at 484. Similarly, the Sixth Circuit has held that 
placement in administrative segregation for two months does not require the protections of due 
process. See Joseph, 410 F. App’x at 868 (61 days in segregation is not atypical and significant). 
It has also held, in specific circumstances, that confinement in segregation for a much longer period 
of time does not implicate a liberty interest. See, e.g., Jones v. Baker, 155 F.3d 810, 812–23 (6th 

Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison 
guard in a riot); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following 
convictions for possession of illegal contraband and assault, including a 117-day delay in 
reclassification due to prison crowding). 
Generally, only periods of segregation lasting for several years or more have been found 
to be atypical and significant. See, e.g., Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (13 
years of segregation implicates a liberty interest); Harris v. Caruso, 465 F. App’x 481, 484 (6th 
Cir. 2012) (eight years of segregation implicates a liberty interest); Harden-Bey, 524 F.3d at 795 
(remanding to the district court to consider whether the plaintiff’s allegedly “indefinite” period of 

segregation, i.e., three years without an explanation from prison officials, implicates a liberty 
interest). Put simply, Plaintiff’s 6-month stay in administrative confinement does not rise to the 
level of an atypical and significant hardship. 
Accordingly, the Court concludes that, to the extent pled, Plaintiff fails to state a plausible 
Fourteenth Amendment procedural due process claim premised upon his stay in administrative 
segregation. Accordingly, any such claims will be dismissed.4 

4 Moreover, to the extent Plaintiff alleges that his placement in segregation violated his Eighth 
Amendment rights, “[b]ecause placement in segregation is a routine discomfort that is a part of the 
penalty that criminal offenders pay for their offenses against society, it is insufficient to support 
an Eighth Amendment Claim.” Harden-Bey, 524 F.3d at 795 (internal quotation marks omitted) 
(quoting Murray v. Unknown Evert, 84 F. App’x 553, 556 (6th Cir. 2003). MoreoveFurthermore, 
 b. Substantive Due Process 
Plaintiff also suggests that Defendants’ actions “shock[ed] the [conscience] under 
community standard[s].” (Compl., ECF No. 1, PageID.21.) The Court, therefore, construes 
Plaintiff’s complaint to assert Fourteenth Amendment substantive due process claims. 
“Substantive due process . . . serves the goal of preventing governmental power from being 

used for purposes of oppression, regardless of the fairness of the procedures used.” Pittman v. 
Cuyahoga Cnty. Dep’t of Child. & Fam. Servs., 640 F.3d 716, 728 (6th Cir. 2011) (quoting Howard 
v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, “[s]ubstantive due process ‘prevents 
the government from engaging in conduct that shocks the conscience or interferes with rights 
implicit in the concept of ordered liberty.’” Prater v. City of Burnside, 289 F.3d 417, 431 (6th Cir. 
2002) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). “Conduct shocks the 
conscience if it ‘violates the decencies of civilized conduct.’” Range v. Douglas, 763 F.3d 573, 
589 (6th Cir. 2014) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998)). Here, 
the Court does not minimize Plaintiff's experience; however, the facts alleged in the complaint fall 
short of demonstrating the sort of egregious conduct that would support a substantive due process 

claim. 
Moreover, “[w]here a particular [a]mendment ‘provides an explicit textual source of 
constitutional protection’ against a particular sort of government behavior, ‘that [a]mendment, not 
the more generalized notion of substantive due process, must be the guide for analyzing these 
claims.’” Albright v. Oliver, 510 U.S. 266, 273–75 (1994) (quoting Graham v. Connor, 490 U.S. 

while Plaintiff states that he was “in constant fear of the defendants contaminating [his] food” and 
that he lost 55 pounds, he fails to allege facts suggesting that any of the named Defendants did, in 
fact, contaminate his food and that he suffered any adverse effects from the weight loss. See, e.g., 
Frazier v. Michigan, 41 F. App’x 762, 764 (6th Cir. 2002) (dismissing plaintiff’s claims where the 
complaint did not allege with any degree of specificity which of the named defendants were 
personally involved in or responsible for each alleged violation of rights). 
386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the 
standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an 
amendment exists, the substantive due process claim is properly dismissed. See Heike v. Guevara, 
519 F. Appx 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment, as well as the Fourth 
Amendment and the Fourteenth Amendment’s Equal Protection Clause, apply to Plaintiff’s claims 

for relief. Consequently, any intended substantive due process claims will be dismissed. 
 c. Equal Protection 
Throughout his complaint, Plaintiff suggests that Defendants violated his rights under the 
Fourteenth Amendment’s Equal Protection Clause. 
The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 
“deny to any person within its jurisdiction the equal protection of the laws,” which is essentially a 
direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; City 
of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state an equal protection claim, 
Plaintiff must show “intentional and arbitrary discrimination” by the state; that is, he must show 
that he “has been intentionally treated differently from others similarly situated and that there is 

no rational basis for the difference in treatment.” Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 
(2000). 
The threshold element of an equal protection claim is disparate treatment. Scarbrough v. 
Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006). Further, “‘[s]imilarly situated’ is a 
term of art—a comparator . . . must be similar in ‘all relevant respects.’” Paterek v. Vill. of Armada, 
801 F.3d 630, 650 (6th Cir. 2015) (quoting United States v. Green, 654 F.3d 637, 651 (6th Cir. 
2011)). 
Here, Plaintiff fails to identify any comparators and fails to allege any facts suggesting that 
he was treated differently than others, let alone that the others were similarly situated. Instead, any 
allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of 
unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. See 
Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. Furthermore, even viewing Plaintiff’s equal 
protection claim as a class of one claim, the Court would reach the same conclusion because 
Plaintiff’s equal protection claims are wholly conclusory, and he has alleged no facts that plausibly 

suggest that his equal protection rights were violated. 
Accordingly, for the reasons set forth above, Plaintiff’s Fourteenth Amendment equal 
protection claims will be dismissed. 
 4. Claim Regarding Defendant Moyer’s Handling of Grievances 
Plaintiff also claims that Defendant Moyer violated his rights by “not giving [him] a proper 
or fair process for [his] grievances and tickets.” (Compl., ECF No. 1, PageID.16.) However, as 
discussed below, mishandling or interfering with a grievance is not active unconstitutional 
behavior. 
First, interference with the grievance remedy does not violate due process because Plaintiff 
has no due process right to file a prison grievance. The courts repeatedly have held that there exists 

no constitutionally protected due process right to an effective prison grievance procedure. See 
Hewitt, 459 U.S. at 467; Walker v. Mich. Dep’t of Corr., 128 F. App’x 441, 445 (6th Cir. 2005); 
Argue v. Hofmeyer, 80 F. App’x 427, 430 (6th Cir. 2003); Young v. Gundy, 30 F. App’x 568, 569–
70 (6th Cir. 2002); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. 
Rice, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty 
interest in the grievance procedure. See Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Keenan v. 
Marker, 23 F. App’x 405, 407 (6th Cir. 2001); Wynn v. Wolf, No. 93-2411, 1994 WL 105907, 
at *1 (6th Cir. Mar. 28, 1994). 
Moreover, actions (or inactions) of Defendant Moyer with regard to the grievance process 
could not constitute a violation of the First Amendment right to petition the government. The First 
Amendment “right to petition the government does not guarantee a response to the petition or the 
right to compel government officials to act on or adopt a citizen’s views.” Apple v. Glenn, 183 
F.3d 477, 479 (6th Cir. 1999); see also Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 

285 (1984) (holding the right to petition protects only the right to address government; the 
government may refuse to listen or respond). 
Finally, Plaintiff has not been barred from all means of petitioning the government for 
redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his 
right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by 
his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion 
of available administrative remedies. See 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied 
access to the grievance process, the process would be rendered unavailable, and exhaustion would 
not be a prerequisite for initiation of a civil rights action. See Ross v. Blake, 578 U.S. 632, 640–44 

(2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the 
interference of officials, the grievance process is not available, and exhaustion is not required); 
Kennedy v. Tallio, 20 F. App’x 469, 470–71 (6th Cir. 2001). 
Thus, Plaintiff cannot maintain a claim against Defendant Moyer premised upon 
interference with the grievance process. 
 Conclusion 
The Court will grant Plaintiff leave to proceed in forma pauperis. (ECF No. 2.) Moreover, 
having conducted the review required by the PLRA, the Court determines that Defendants Moyer 
and McCyentyre will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 
1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the 
following claims against Defendants Stump, Klein, Demores, and Valdez: (1) Plaintiff’s official 
capacity claims; (2) any personal capacity claims for declaratory relief; (3) any Eighth Amendment 
claims premised upon verbal and sexual harassment; and (4) Plaintiff’s Fourteenth Amendment 
due process and equal protection claims. The following personal capacity claims for damages 
against Defendants Stump, Klein, Demores, and Valdez remain in the case: (1) Plaintiff’s Fourth 

Amendment claims; and (2) Plaintiff’s Eighth Amendment excessive force claims. 
An order consistent with this opinion will be entered. 

Dated: October 11, 2024 /s/ Paul L. Maloney 
 Paul L. Maloney 
 United States District Judge